IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| Plaintiff/Respondent,    ) | |
| ) | |
| vs.    ) | NO. 2:13-cr-111 |
| ) | 2:25-cv-463 |
| ) | |
| FRANK PEREZ, JR.,    ) | |
| ) | |
| Defendant/Petitioner.    ) | |

## **OPINION AND ORDER**

In this petition under section 2255, Perez challenges his sentence, claiming ineffective assistance of counsel. Specifically, he argues his counsel should have asked for a recommendation that Perez receive credit for time served from when he entered federal custody on September 30, 2014, until when he was sentenced on this case in June 2018. This motion fails because it is untimely, and, in any event, I had no intention of making Perez's sentence "concurrent to" the beginning of his other federal sentence, as I already told Perez in an order denying a motion to correct clerical error [DE 782].

**Background**

Back in August 2014, Perez (who was part of a dangerous street gang named Two Six Nation) was charged along with a number of co-defendants in a second superseding indictment with conspiracy to participate in racketeering activity (Count 1); conspiracy to posses with intent to distribute and distribute various drugs (Count 2);

murder in aid of racketeering (Count 3); and murder resulting from the use of a firearm during and in relation to a crime of violence (Count 4). [DE 87.] At the time he was indicted in this case, Perez was serving another federal sentence for assaulting federal officers; he shot at FBI agents in Pennsylvania when they attempted to arrest him [PSR, DE 548 at 12].

Perez was arrested in this case on September 30, 2014. [DE 145.] That same day, Perez made his initial appearance and was remanded to the custody of the U.S. Marshal. [DE 140.] About a week later, Perez waived a detention hearing because he was serving the sentence for the above described assault on FBI Agents and was therefore not eligible for bond. [DE 151.]

In December 2015, the government filed a third superseding indictment. [DE 247.] Perez later pleaded guilty to racketeering conspiracy (Count 1 in the third superseding indictment). [DE 451 at 4; DE 453.] In his plea agreement, Perez admitted that he was responsible for at least 1,000 kg of marijuana. He also admitted that he murdered Jose Pena as part of the racketeering conspiracy. [DE 451 at 5.] The written plea agreement also provided that the government would recommend that Perez's Indiana sentence run concurrent to his Pennsylvania sentence, and that the sentence would be capped at 360 months' imprisonment. [*Id.* at 5.]

At the change of plea hearing, Perez testified in chilling detail about the specifics of the murder of Jose Pena, which he took responsibility for. Specifically, Perez testified he was with a friend, driving to buy marijuana, when along the way they saw Mr. Pena

2

who was a rival gang member. Pena threw up an offending gang sign and exited his vehicle, approaching Perez. [DE 500 at 2-4.] In response, Perez testified he "fired shots at [Pena], shot him." [*Id.* at 4.] Then he "decided to run back up to him and shoot [Pena] again two more times, and then [Perez] got into the vehicle, and [Perez] took off from that point." [*Id.* at 4-5.] The government provided evidence that when Perez went back to deliver the additional two shots, Perez shot Pena in the head and killed him. [*Id.* at 11.]

To get a full picture of the sequence in this complicated procedural case, it's necessary to go back in time to recap for a moment. The State of Indiana first charged Perez with the Pena murder. [DE 548 at 7, 9.] In the aftermath, Perez fled to Mexico. [*Id.*] In 2011, law enforcement tracked Perez to a house in Pennsylvania. [*Id.* at 12.] As agents approached the house to arrest Perez, he shot at them from inside the house and then engaged in an hour long standoff. *Id.* That is the conduct that led to Perez's guilty plea in federal court in the Western District of Pennsylvania. [DE 548 at 12.] *See United States v. Perez*, No. 11-cr-252 (W.D. Pa. 2011). That court sentenced Perez in August 2012 to 180 months' imprisonment.

It wasn't until two years later that Perez was charged in this case for his involvement in the Two Six conspiracy. He was arrested in September 2014. [DE 140, 145.] After he pled guilty as described above, on June 18, 2018, I sentenced Perez on Count 1 of the third superseding indictment to 188 months in the Bureau of Prisons, concurrent with his other sentence in the Western District of Pennsylvania. [DE 594.]

The Guideline range was 188-235 months' imprisonment. [DE 791, Sent. Tr., at 5, 8.] I announced the sentence at the low-end of the guideline range as follows: Perez was ordered "committed to the custody of the Bureau of Prisons for a term of 188 months. That will be concurrent to the sentence that he's serving in the Western District of Pennsylvania under Cause No. 11-CR-252." [*Id.* at 21-22; *see also* the written judgment at DE 596 at 2.] I told Perez at sentencing "this is a very favorable sentence I have just given you because, listen, you've engaged in a lot of really pretty vicious conduct; but I honestly think you have demonstrated that you have made a decided change in your life." [DE 791 at 24.]

According to Perez, he learned "[o]n March 8, 2024, the BOP 'audited' defendant's sentence calculation and effectively added the identical 5 years incarceration that [co-defendant] Tancil appealed to defendant's sentence because of the language of the written judgment." [DE 782 at 1.] In other words, Perez claims he was scheduled for release in March 2025, which was changed to March 2030. *Id.* Perez filed with the Court a "Motion to Correct Clerical Error Under Fed. R. Crim. P. 36." [DE 782.] He believed his written judgment conflicted with the oral pronouncement, and contended his judgment should be corrected "in accordance with the judgment of defendant's co-defendant, Mr. Adron H. Tancil's amended judgment." [DE 782 at 1.] Specifically, Perez contended "[t]he Court's oral pronouncement of the sentence in this case, and the written judgment are identical to those in defendant's co-defendant Tancil's case . . . causing an additional 5 years of incarceration to be added by the BOP's

4

sentence calculation." *Id.*

In an opinion dated November 20, 2024, I found that Perez's situation was different from his co-defendant, Tancil. [DE 794 at 4.] Unlike Tancil's attorney, Perez's attorney never asked the Court to credit Perez for the time between when he entered federal custody on September 30, 2014, and when he was sentenced on June 18, 2018. *Id.* Therefore, I found there was no discrepancy between my oral pronouncement of the sentence for Perez and the written judgment - both clearly (and correctly) provided Perez was sentenced to 188 months imprisonment concurrent with what remained of his sentence out of the Western District of Pennsylvania. [*Id.* at 5.] Finally, I noted "[i]n this case, I had no intention of making Perez's sentence 'concurrent to' the beginning of his other federal sentence (or backdated)." *Id.* Indeed, judges cannot "mak[e] federal sentences run retroactively from an earlier starting date." *Id.* (*see* cases cited therein).

On October 6, 2025, Perez filed the instant motion to vacate his sentence under section 2255, arguing his counsel was ineffective for failing to ask for prior jail credit. [DE 800.] In the motion, Perez claims he could not have exercised due diligence any earlier than March 8, 2024, when he learned about the BOP "audit" which allegedly removed his jail credit. [*Id.* at 1.] Specifically, Perez argues this counsel was ineffective for "not . . . advocat[ing] and/or request[ing]" he receive credit towards his Indiana sentence for the period between when he was arrested on the Indiana charges in September 2014 through the time he was sentenced by this Court in June 2018. [*Id.* at 2.] Perez alleges he was prejudiced because had his counsel advocated for jail credit, "the

5

BOP would have had no opportunity to conduct the March 8, 2024, audit and interpret the written judgment's silence as permission to remove the jail credit from defendant's sentence computation," and would have instead been forced to give Perez credit for that time period. [*Id.* at 2.]

## Discussion

A petitioner seeking relief under §2255 faces a high hurdle. Indeed, such relief is only available "in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Harris v. United States*, 13 F.4th 623, 627 (7th Cir. 2021) (quoting *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014)). *See also*, *Coleman v. United States*, 79 F.4th 822, 826 (7th Cir. 2023) (describing relief under § 2255 as an "extraordinary remedy and therefore only available in limited circumstances"). In order to proceed on a habeas corpus petition pursuant to section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).

In assessing Perez's motion, I am mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). On the other hand, "a district court should not

6

'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Riley v. United States*, No. 2:05-cv-380, 2006 WL 2849721, at *2 (N.D. Ind. Sept. 28, 2006) (quoting *Barnett v. Hargett*, 174 F.3d 1128, 133 (10th Cir. 1999)).

Before I address Perez's claims of ineffective assistance of counsel, I must first review the government's claim that this motion should be dismissed as untimely. [DE 803 at 4-6.] Section 2255 has a one-year limitation period that begins to run the "latest of" four dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Perez's judgment was issued on June 28, 2018. [DE 596.] Perez didn't file a direct appeal. Consequently, June 28, 2018, was the date his judgment became final and this motion is, at first blush, filed years late.

7

However, Perez claims under section 2255(f)(4) he just became aware of newly discovered facts to support his claim. The government argues: (1) if his counsel was allegedly ineffective for failing to recommend Perez get credit at sentencing, that fact was known to Perez at the time of sentencing back in 2018 so his one year window should have started then; or (2) at the latest, Perez discovered his counsel's alleged ineffective assistance after the "audit" in March 2024, so his section 2255 motion was due in March 2025 (making the actual motion filed in October 2025 about 7 months late). [DE 803 at 5-6.] Perez contends: "[a]lmost immediately after the March 2024 audit, defendant filed a Rule 36 proceeding. At the conclusion of the Rule 36 proceeding, this Court's order made clear that the Judgment was silent as to whether or not prior jail credit should be awarded from September 2014-June 2018." [DE 804 at 1.] Therefore, he concludes "defendant did not have all the facts underlying the basis for the March 2024 audit until this Court ruled on the Rule 36 motion." *Id.* This Court ruled on the Rule 36 motion on November 20, 2024 (and the section 2255 motion was filed within a year of this date, on October 6, 2025). [DE 794.]

After this ruling, Perez filed a notice of appeal and the Seventh Circuit affirmed the decision on July 15, 2025.[1] [DE 799.] Perez argues if he had filed this Rule 2255 motion while the Rule 36 appeal was pending, "the government would have argued,

---

[1] The Seventh Circuit noted Perez sought to alter his judgment under Rule 36, "a vehicle for curing clerical mismatches between written and oral sentencing pronouncements" but that rule did not permit a court to alter a written judgment that accurately reflected the judge's decision and "[t]here was no error here, clerical or otherwise." [DE 799-2 at 3.]

8

and this Court would have concluded, that it didn't have jurisdiction to review the claim because the Rule 36 appeal would have deprived the Court of jurisdiction over the Section 2255 motion until the Rule 36 appeal was decided." [DE 804 at 1.]

Perez has set forth an interesting argument, but one that is defeated by a close reading of the statute itself. Rule 2255(f)(4) provides that the one-year period of limitation for section 2255 petitions runs from "the date on which the *facts* supporting the claim or claims presented *could have been* discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4) (emphasis added). Perez is citing to this Court's ruling on his Rule 36 motion and then waiting for the Seventh Circuit to rule on the appeal, but these are a *legal* basis for tolling the statute of limitations, not the facts that support his claim. *See Moye v. United States*, No. 4:10-CR-80-FL-1, 4:13-CV-233-FL, 2016 WL 4004580, at *6 (E.D. N.C. May 27, 2016) (noting difference between a legal basis and factual basis under section 2255(f)(4)). Here, the facts supporting Perez's claim are: his counsel did not request jail credit during the sentencing hearing (something Perez was aware of at the sentencing); and the latest possible fact that Perez could argue applies to the timeliness issue is the "audit" by the BOP in March 2024 allegedly changing his release date. More than a year passed after both of these facts occurred, and therefore this motion is untimely.

Section 2255(f)(4) establishes the date on which the limitations period begins to run; that date is determined by when "'the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.'" *Jones v.*

9

*United States*, 20 F. App'x 520, 2001 WL 1108820, at *3 (7th Cir. Sept. 17, 2001) (quoting 28 U.S.C. § 2255(f)(4)). "Inquiry into due diligence focuses on when the factual predicate of a particular claim *could have been* discovered; recognition of the legal significance of the facts is irrelevant, as is the time that the underlying facts were actually discovered." *Id.* (emphasis in original) (citing *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). But Section 2255(f)(4) "is not triggered when a petitioner discovers or understands a new legal decision or theory." *United States v. Hayes*, No. 19 C 50104, 2020 WL 2112367, at *2 (N.D. Ill. May 4, 2020); *see also Reynolds v. United States*, No. 15-CV-26, 2018 WL 1257751, at *3 (S.D. Ill. Mar. 12, 2018) ("A court decision can only serve as a 'fact' within the meaning of § 2255(f)(4) if it is handed down within the petitioner's own litigation history and changes his legal status", for example, an order vacating a predicate conviction).

Here, as I mentioned earlier, Perez was aware of the fact that his counsel did not request a credit for jail time at the sentencing. And he allegedly became aware of the BOP conducting an "audit" and changing his release date in March 2024. Even if the one-year statute of limitations applies to the later of these two dates (the BOP audit), Perez still failed to file his section 2255 motion within the one year window. Therefore, it is barred by the statute of limitations.

Finally, even if I were to address the merits, Perez's motion is a loser. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the assistance of counsel for his defense. U.S. Const. Amend. VI. When reviewing a §2255

motion claiming ineffective assistance of counsel, I evaluate the claim using the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984); *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) ("Generally, claims of ineffective assistance of counsel are evaluated under a two-prong analysis announced in *Strickland*.").

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. "Under *Strickland*, a claimant must prove (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that the attorney's deficient performance prejudiced the defendant such that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *McDowell*, 497 F.3d at 761 (quoting *Strickland*, 466 U.S. at 694). If the petitioner fails to illustrate that either prong of the test is satisfied, there is no need for me to evaluate the other prong of the test. "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

Generally, I take a deferential view of attorney performance with the underlying assumption being that counsel's conduct falls within the wide range of reasonable professional assistance. *See United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Jordan v. Hepp*, 831 F.3d 837, 846 (7th Cir. 2016) (quoting *Strickland*, 466 U.S. at 690). For me to

decide that counsel's representation was inadequate, counsel's representation must have fallen "below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). Making a showing that counsel's representation was constitutionally inadequate is not easy. *See Jordan*, 831 F.3d at 846.

As for the second prong, to make a showing that counsel's inadequate representation led to prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lee v. Galloway*, 106 F.4th 668, 673 (7th Cir. 2024) (quoting *Strickland*, 466 U.S. at 694). "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Gilbreath v. Winkleski*, 21 F.4th 965, 989 (7th Cir. 2021). Counsel's conduct must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *United States v. Hise*, 65 F.4th 905, 909 (7th Cir. 2023). A review of whether counsel's performance caused prejudice is "highly deferential to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005).

There is simply no evidence that Perez's counsel provided ineffective assistance. His counsel negotiated a favorable plea agreement (not only in length of imprisonment, but also getting the government to agree that his sentence would run concurrent to what remained of the Pennsylvania sentence). Perez was an active gang member who dealt large quantities of drugs and killed a man by shooting him in the head. As I noted at the sentencing hearing, I gave him a very lenient sentence. [DE 791 at 24.] Finally, I

12

noted in my order denying Perez's Rule 36 motion that I intended to sentence Perez to 188 months imprisonment concurrent with the sentence in Pennsylvania. [DE 794 at 5.] Also I noted that "[i]n this case, I had no intention of making Perez's sentence 'concurrent to' the beginning of his other federal sentence (or backdated)." [DE 794 at 4.] In other words, the sentence in this case began running concurrent to the Pennsylvania sentence, on the day I announced it, not retroactive to 2014. There is no prejudice here because even if Perez's counsel had asked for jail credit going all the way back to when he started serving his Pennsylvania sentence, I would have dismissed it out of hand. To go along with that suggestion would have been akin to giving Perez a total pass on his act of shooting at FBI Agents when they were lawfully seeking to arrest him. In no world would I have done such a thing. Instead, I gave the sentence that I believed (and still do believe) was accurate and just.

## Conclusion

For the foregoing reasons, Perez's § 2255 [DE 800] is **DENIED.** The Clerk shall enter final judgment accordingly.

SO ORDERED.

ENTERED: December 15, 2025.

 s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT